UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KEVIN L. LANE,<br><br>                Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                Defendant. | NO.  C15-905-RSL-JPD<br><br><br>REPORT AND<br>RECOMMENDATION |

Plaintiff Kevin L. Lane appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further administrative proceedings.

                I.       FACTS AND PROCEDURAL HISTORY

Plaintiff is a 52-year-old man with a high school diploma.  Administrative Record ("AR") at 322.  His past work experience includes employment as an auto detailer, apartment

REPORT AND RECOMMENDATION - 1

complex maintenance supervisor, and janitorial supervisor. AR at 322, 425. Plaintiff was last gainfully employed in September 2010. AR at 321.

On February 16, 2012, Plaintiff protectively filed a claim for SSI and DIB, alleging an onset date of February 15, 2012. AR at 294-305, 405. Plaintiff asserts that he is disabled due to a thyroid condition, depression, arthritis, bipolar disorder, carpel tunnel syndrome, fibromyalgia, shoulder and back pain, and migraine headaches. AR at 321, 409, 456.

The Commissioner denied Plaintiff's claims initially and on reconsideration. AR at 179-82, 185-97. Plaintiff requested a hearing, which took place on March 25, 2013. AR at 43-83. On April 18, 2013, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on her finding that Plaintiff could perform his past work, as well as specific jobs existing in significant numbers in the national economy. AR at 22-35. After reviewing additional evidence, the Appeals Council denied Plaintiff's request for review. AR at 2-12. On June 7, 2015, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1, 3.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

REPORT AND RECOMMENDATION - 2

(9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.  EVALUATING DISABILITY

As the claimant, Mr. Lane bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R.

§§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

V.     DECISION BELOW

On April 18, 2013, the ALJ found:

1. The claimant meets the insured status requirements of the Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since February 15, 2012, the alleged onset date.

3. The claimant's bilateral carpal tunnel syndrome; left ulnar neuropathy; acromioclavicular degenerative joint disease; a mood disorder variously diagnosed as a bipolar, major depressive disorder, and depressive disorder; an anxiety disorder; and pain disorder are severe.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. The claimant has the RFC to perform a range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). He can frequently climb ramps and stairs, balance, kneel, crouch, and crawl. He can occasionally climb ladders, ropes, and scaffolds. He has no limitation in terms of stooping. He can perform frequent bilateral fingering and frequent pushing and pulling bilaterally. He must avoid concentrated exposure to extreme cold, heat, vibration, and hazards such as moving machinery and unprotected heights. He can understand, remember, and carry out simple as well as well-learned familiar tasks. He can work in two-hour intervals. Contact with the general public cannot be an essential element of any task. However, incidental contact with the public is not precluded. He can work in a routine and predictable workplace environment.

6. The claimant is capable of performing past relevant work as an automobile detailer, a building maintenance repairer, and a janitorial service supervisor.

7. In the alternative, considering the claimant's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that the claimant can perform.

8. The claimant has not been under a disability, as defined in the Act, from February 15, 2012, through the date of this decision.

AR at 24-34.

REPORT AND RECOMMENDATION - 5

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred at step two in finding that fibromyalgia was not a medically determinable impairment, and in failing to address a bilateral knee impairment;

2. Whether the ALJ erred in assessing medical opinion evidence;

3. Whether the ALJ erred in discounting Plaintiff's credibility; and

4. Whether the ALJ erred in discounting lay witness statements.

Dkt. 14 at 1.

## VII.   DISCUSSION

A.   The ALJ Erred at Step Two.

Plaintiff argues that the ALJ erred in failing to include fibromyalgia and a knee impairment at step two. The Court will discuss the evidence related to each alleged impairment in turn.

1.   *Legal Standards at Step Two*

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985)).

A step two severe mental or physical impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable

clinical and laboratory diagnostic techniques, and established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms. 20 C.F.R. §§ 404.1508, 416.908.

    2.    *Fibromyalgia*

Plaintiff argues that the ALJ erred in finding that his fibromyalgia was not medically determinable. The ALJ acknowledged that the record contains references to a prior fibromyalgia diagnosis, but no examination that is consistent with the diagnostic criteria set forth by the American College of Rheumatology or as laid out in SSR 12-2p. AR at 25. The ALJ also noted that there was evidence in the record that Plaintiff did not exhibit any trigger points. *Id*. (citing AR at 666).

Plaintiff argues that the evidence shows that while he may not meet the first alternative diagnostic criteria set forth in SSR 12-2p, he does in fact satisfy the second alternative diagnostic criteria. Dkt. 16 at 2. The second set of diagnostic criteria defined in SSR 12-2p requires: (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, "especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) evidence that other disorders that could have caused the symptoms listed in part (2) were excluded. 2012 WL 3104869, at *3 (Jul. 25, 2012).

Plaintiff has not cited evidence showing that he satisfies the second criterion. He cites evidence that he contends shows "manifestation of symptoms and co-occurring disorders[,]" but the evidence cited does not indicate repeated manifestations of six or more of them. Dkt. 14 at 5 (citing AR at 606, 717-19, 728-53, 799-811, 827-31). Although the record does mention reports of fatigue, depression, anxiety, and sleep disturbances, those symptoms are

REPORT AND RECOMMENDATION - 7

attributed to his thyroid condition and mental disorder, not fibromyalgia, and worsened when Plaintiff had stopped taking his medications. *See, e.g.*, AR at 717, 728-53, 801-02, 809-11. This evidence does not satisfy the second set of criteria listed in SSR 12-2p, and thus Plaintiff has not shown that the ALJ erred in finding that his fibromyalgia was not medically determinable.

3.  *Bilateral Knee Impairment*

Plaintiff notes that examining physician Gary Gaffield, D.O., diagnosed "bilateral knee weakness[,]" which the physician concluded caused limitations in Plaintiff's ability to stand and walk. *See* AR at 666. Plaintiff argues that even if the knee impairment would not be considered a severe impairment, the limitations caused by it should have been considered by the ALJ at later steps in the sequential evaluation. Dkt. 14 at 6.

The Commissioner does not address this argument in her brief. Dkt. 15. In the absence of a defense of the ALJ's failure to include a diagnosed knee impairment, the Court finds that this failure amounts to harmful error that requires remand for further consideration of the knee impairment.

B.  <u>The ALJ Shall Reconsider Plaintiff's Credibility on Remand.</u>

The ALJ provided three reasons to discount the credibility of Plaintiff's subjective complaints, including (1) inconsistent daily activities, (2) a lack of corroborating medical evidence, and (3) failure to seek treatment for his mental health symptoms. AR at 28-30. Plaintiff argues that these reasons are not clear and convincing, and the Court will address each reason in turn.

1.  *Legal Standards*

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial

REPORT AND RECOMMENDATION - 8

evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p, 1996 WL 374186. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

2.    *Daily Activities*

The ALJ found that Plaintiff's "wide range" of daily activities and social interaction "are inconsistent with his allegations of disabling pain and mental health symptoms." AR at 28. This reasoning is insufficiently specific, because the ALJ does not identify which

REPORT AND RECOMMENDATION - 9

allegations are inconsistent with which activities. It is not apparent how Plaintiff's self-reported ability to care for his 4-year-old granddaughter, complete household chores, and attend church twice a week contradicts other portions of his testimony. Accordingly, this reason fails.

        3.     *Lack of Corroborating Medical Evidence as to Physical Limitations*

The ALJ noted that shortly before Plaintiff's alleged disability onset date, a consultative examiner opined that he could perform medium-level jobs with frequent postural activities, bilateral gross handling, and bilateral fine manipulation. AR at 28-29 (citing AR at 574-77). The ALJ further noted that the record "does not reveal any significant change or deterioration in his condition" since his alleged onset date. AR at 29. The ALJ summarized evaluations and examination findings that occurred since the alleged onset date, and concluded that the findings did "not substantiate the claimant's allegations of disabling limitations." AR at 28-29.

Plaintiff argues that the ALJ's reliance on objective findings is misplaced because Plaintiff alleges limitations caused by fibromyalgia, which would not necessarily cause any objective testing abnormalities. Dkt. 14 at 17-18. But, as explained in the prior section, the ALJ did not err in finding that fibromyalgia was not a medically determinable impairment, and thus did not err in failing to account for limitations caused by fibromyalgia. *See* SSR 96-8p, 1996 WL 374184, at *1 (Jul. 2, 1996) ("The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments[.]").

The ALJ's citation to objective physical findings that do not corroborate Plaintiff's allegations of disabling physical limitations does support the adverse credibility determination. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence

REPORT AND RECOMMENDATION - 10

cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

    4.  *Lack of Mental Health Treatment*

    The ALJ found that "[d]espite recommendations by his providers, [Plaintiff] has not obtained any meaningful treatment of his mental health symptoms." AR at 30. The ALJ also noted that although Plaintiff did complete a psychiatric intake appointment at Bridgeways in September 2012, he canceled many of his subsequent psychiatric appointments. AR at 30 (citing AR at 841-71).

    Plaintiff argues that the ALJ overlooked the reasons Plaintiff provided for missing his appointments. On a few occasions, he stated that he could not attend due to transportation problems. AR at 843, 845, 859. On other occasions, he reported illness. AR at 849, 850. Plaintiff also missed one appointment because he reported feeling overwhelmed by a search for housing. AR at 861. Other times, however, Plaintiff offered no reason why he did not show up for an appointment. AR at 852, 853, 870. The Commissioner does not address the reasons that Plaintiff missed appointments or provide any explanation as to why these reasons are not sufficient. Dkt. 15 at 8.

    In light of the Commissioner's incomplete defense of the ALJ's adverse credibility determination, and the error already identified above requiring remand, the ALJ should be instructed to reconsider Plaintiff's credibility on remand. Furthermore, because the ALJ must reconsider Plaintiff's credibility, the ALJ should also reconsider the lay witness statements, which were discounted for the same reasons applied to Plaintiff's testimony. *See* AR at 32.

C.  <u>The ALJ Erred in Assessing One Medical Opinion.</u>

    Plaintiff argues that the ALJ erred in crediting an opinion from examining physician John Simmonds, M.D., and examining psychologist Rodger Meinz, Ph.D.; partially

REPORT AND RECOMMENDATION - 11

discounting an opinion from non-examining State agency physician Norman Staley, M.D.; and rejecting opinions provided by examining physicians Dr. Gaffield and Madhurina Roy, M.D., as well as examining psychologist Nicole Winters, LICSW, Psy.D.  The Court will address each disputed opinion in turn.

1. *Legal Standards*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

REPORT AND RECOMMENDATION - 12

physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. SSR 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

2. *Dr. Simmonds*

Dr. Simmonds examined Plaintiff in August 2011, six months before Plaintiff's alleged onset date. AR at 574-78. Plaintiff argues that Dr. Simmonds' opinion should not have been assigned "significant evidentiary weight" (AR at 30) because it predates his alleged onset date.

The ALJ acknowledged that Dr. Simmonds' opinion was related to a prior application and predated the current alleged onset date, but found that the evidence "does not reveal any significant change in his condition since that time." AR at 30. Plaintiff argues that in finding that his condition had not changed, the ALJ overlooked evidence showing that his carpal tunnel syndrome worsened. Dkt. 14 at 7-8.

The record does contain February 2012 EMG evidence suggesting severe carpal tunnel syndrome. AR at 638-40. A November 2012 study showed only mild carpal tunnel syndrome, however. AR at 816. The ALJ also cited treatment notes from December 2012 that mention "relatively benign" findings. AR at 30 (citing AR at 801, 813-14). Plaintiff argues that the ALJ erred in interpreting this evidence to mean that "there was never an intervening event in

February 2012 to support [Plaintiff's] application for disability[,]" (Dkt. 14 at 8), but Plaintiff has not shown how this interpretation would be an error. The February 2012 EMG would support a finding that Plaintiff's carpal tunnel syndrome had worsened, but the subsequent testing would contradict that conclusion. The "relatively benign" findings cited by the ALJ, including normal sensory, motor, and range-of-motion findings, and no complaints related to carpal tunnel syndrome (AR at 801, 813-14), are consistent with the ALJ's interpretation that, on the whole, Plaintiff's condition did not worsen since the time of Dr. Simmonds' examination. Thus, Plaintiff has not established that the ALJ erred in assessing Dr. Simmonds' opinion.

      3.    *Dr. Meinz[2]*

Dr. Meinz examined Plaintiff in March 2012 and completed a DSHS form opinion. AR at 837-40. Dr. Meinz noted that he did not observe the symptoms he described in the "clinical findings" section of his opinion. AR at 837. Dr. Meinz concluded that, from a psychological standpoint, Plaintiff could work, but that medical opinions would be necessary to determine what kind of work he could do. AR at 838.

The ALJ gave "significant evidentiary weight" to Dr. Meinz's opinion, finding it consistent with Plaintiff's performance on mental status examination, Plaintiff's lack of "meaningful mental health treatment, and his wide range of daily activities including caring for his young granddaughter on his own." AR at 31. Plaintiff argues that the ALJ's assessment of Dr. Meinz's opinion fails to acknowledge the equivocal nature of Dr. Meinz's opinion, or to

---

[2] Plaintiff argues that the ALJ's errors in assessing Dr. Meinz's opinion were compounded by the ALJ's reliance on State agency reviewing psychological consultants who based their opinions in part on Dr. Meinz's opinion. Dkt. 14 at 13. But, as explained *infra*, the ALJ did not err in assessing Dr. Meinz's opinion, and thus Plaintiff has not identified an error as to the State agency consultants' opinions.

REPORT AND RECOMMENDATION - 14

recognize Dr. Meinz's opinion as to the interplay between Plaintiff's physical and mental impairments. Dkt. 14 at 13.

Contrary to Plaintiff's argument, Dr. Meinz's opinion is not equivocal as to Plaintiff's mental limitations. Dr. Meinz states clearly that Plaintiff can work from a psychological perspective, but Dr. Meinz is, as a psychologist, understandably reluctant to comment on Plaintiff's physical abilities. AR at 838. Dr. Meinz also noted that Plaintiff reported experiencing depression for "most of his life," although he was able to work during many of those years. *Id*. While it may be true that Dr. Meinz's opinion does not address all of the (*i.e.* physical) limitations that Plaintiff may have, Dr. Meinz's opinion clearly states that Plaintiff can comprehend and follow instructions, and perform work "from a psychological perspective." AR at 838-39. Plaintiff has failed to establish that the ALJ erred in assessing Dr. Meinz's opinion.

4.   *Dr. Staley*

Dr. Staley reviewed Plaintiff's record in October 2012, and opined that Plaintiff was limited to light work. AR at 120-53. The ALJ gave "some weight" to this opinion, finding that treatment notes more recent than Dr. Staley's review showed "essentially normal electrodiagnostic findings and largely unremarkable physical examinations." AR at 31. The ALJ found that this more recent evidence, "[c]oupled with the claimant's wide range of independent daily functioning," indicated that Plaintiff could perform medium work. *Id*.

Plaintiff argues that the ALJ erred in interpreting the medical record, because although some of the medical evidence during the relevant period is normal, some of it is not. Dkt. 14 at 8-9. Most of the evidence cited by Plaintiff predates Dr. Staley's October 2012 review of the record, however, and thus does not show that the ALJ erred in finding that *subsequent* evidence contradicted Dr. Staley's opinion. Dkt. 14 at 9 (citing evidence from May, August,

REPORT AND RECOMMENDATION - 15

and September 2012). Furthermore, to the extent that the ALJ erred in discounting Dr. Staley's opinion that Plaintiff could perform light work, this error is harmless because the ALJ identified multiple light jobs at step five that Plaintiff can perform. *See* AR at 34.

5.  *Drs. Gaffield & Roy*

Dr. Gaffield examined Plaintiff in May 2012, and found that Plaintiff was limited to four hours of standing/walking, had no sitting limitations, and could lift/carry 20 pounds occasionally and 10 pounds frequently. AR at 662-67. Dr. Gaffield also opined that Plaintiff's carpal tunnel syndrome required that "[m]anipulative activities need to be avoided[.]" AR at 666.

Dr. Roy examined Plaintiff in April 2012, and opined that she expected Plaintiff to have work-related limitations for 3-4 months, and that she expected he would be employable with adequate pain control, mental health medications, and possible carpal tunnel surgery. AR at 644-45.

The ALJ gave limited weight to the opinions of Drs. Gaffield and Roy, finding the opinions inconsistent with "the more recent and essentially normal electrodiagnostic testing of [Plaintiff's] upper extremities, as well as largely unremarkable physical examinations in late 2012." AR at 31 (citing AR at 801, 813-14, 816). The ALJ also found that the opinions of Drs. Gaffield and Roy were based in part on Plaintiff's non-credible self-reporting. AR at 31. The ALJ found that Dr. Gaffield's opinion was not supported by his own contemporaneous objective findings, and was also inconsistent with Plaintiff's daily activities. *Id*.

Plaintiff argues that even if the electrodiagnostic testing cited by the ALJ establishes only mild carpal tunnel syndrome on the right and mild ulnar neuropathy on the left, these mild findings are nonetheless consistent with manipulative limitations noted by Dr. Gaffield. Dkt. 14 at 10. Dr. Gaffield did note "parasthesias only in the right hand involving the 3rd and 4th

digits compatible with a median nerve compression." AR at 664. Dr. Gaffield also noted Plaintiff's difficulty in picking up and separating coins. *Id*. These findings are not necessarily consistent with a conclusion that Plaintiff must avoid *all* manipulative activities, however. *See* AR at 666. The ALJ reasonably found that the abnormalities noted by Dr. Gaffield do not support his finding that Plaintiff must avoid all manipulative activities, and thus did not err in discounting Dr. Gaffield's opinion on that basis.

Dr. Roy did not indicate that Plaintiff had any gross or fine motor skill limitations, despite noting his carpal tunnel syndrome. *See* AR at 644-45. The subsequent testing undermines Dr. Roy's opinion that Plaintiff's carpal tunnel syndrome could necessitate surgery, and thus provides a specific, legitimate reason to discount Dr. Roy's opinion.

The ALJ also discounted the opinions of Drs. Roy and Gaffield due to reliance on non-credible self-report. It is not clear that Dr. Roy's opinion is based on Plaintiff's self-reporting. Dr. Gaffield's opinion does describe Plaintiff's self-reported symptoms, but also contains a full physical examination and objective testing. Accordingly, the ALJ erred in discounting these opinions based on reliance on non-credible self-report.

Likewise, the ALJ erred in finding Dr. Gaffield's opinion to be inconsistent with Plaintiff's activities, without explaining how those activities contradict Dr. Gaffield's opinion. AR at 31. These errors are harmless, however, due to the ALJ's providing other valid reasons to discount the opinions of Drs. Gaffield and Roy.

6. *Dr. Winters*

Dr. Winters examined Plaintiff in May 2012, and concluded that he had social and cognitive limitations that would impact his ability to work. AR at 655-59. The ALJ gave limited weight to Dr. Winters' opinion and Global Assessment of Functioning ("GAF") score of 45, finding her conclusions as well as her GAF score to be "inconsistent with the claimant's

longitudinal treatment history and independent daily activities set forth above." AR at 31. The ALJ also noted that Dr. Winters relied on Plaintiff's self-report, but that Plaintiff did not disclose all of his activities to Dr. Winters, including his custody of his young granddaughter. AR at 31-32.

It is not clear that Plaintiff failed to disclose anything about his situation regarding his granddaughter, however. Plaintiff described a typical day involving time spent with his "grandchildren." AR at 658. Furthermore, Plaintiff testified that he lived with his daughter for some time, and then moved out with his granddaughter in late 2012. AR at 47. He also testified that the paperwork was in process for him to officially have custody of his granddaughter. AR at 46. Thus, Plaintiff does not appear to have misrepresented any aspect of his situation to Dr. Winters.

Nonetheless, Dr. Winters' opinion report does indicate a reliance on Plaintiff's self-report. For example, she found that Plaintiff "gets confused easily and frustrated[,]" without citing any observation of that behavior, and she also opined that repeating instructions for Plaintiff "would necessitate talking to others more than he is comfortable with." AR at 659. Dr. Winters also opined that Plaintiff would "be unable to tolerate a fixed work schedule or production demands without aggravating his thoughts of worthlessness and frustration." AR at 659. All of these opinions, which form the bulk of Dr. Winters' conclusions, appear to be based on Plaintiff's self-report, rather than clinical findings or observations. But because the ALJ must reconsider Plaintiff's credibility on remand, the Court cannot find that it was appropriate to discount Dr. Winters' opinion based on reliance on self-reporting. On remand, the ALJ should reconsider Dr. Winters' opinion.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED for further administrative proceedings.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **January 26, 2016**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **January 29, 2016**.

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 12th day of January, 2016.

*James P. Donohue*
JAMES P. DONOHUE
Chief United States Magistrate Judge